154 So.2d 3

**UNITED STATES FIRE INS. CO.**

v.

Virginia Ann HODGES, pro ami.

**LITITZ MUTUAL INS. CO. et al.**

v.

Virginia Ann HODGES et al.

6 Div. 932, 932–A.

Supreme Court of Alabama.

May 30, 1963.

244

Chas. A. Stewart, Huie, Fernambucq & Stewart, Birmingham, for appellant.

Mead, Norman & Fitzpatrick, Birmingham, for cross-appellants.

Waldrop Windham and Higgins, Windham, Perdue & Johnson, Birmingham, for Virginia Ann Hodges.

Cabaniss & Johnston and Drayton T. Scott, Birmingham, for Auto Electric and Ed J. Hodges.

Wm. M. Acker, Jr., Smyer, White, Reid & Acker, Birmingham, for Mayfield.

MERRILL, Justice.

This appeal with cross-assignments of error is from a decree in a declaratory judgment proceeding in equity determining the rights of parties and insurance companies arising out of an accident in which appellee Mayfield was run over and seriously injured by a motor boat driven by Virginia (Jennie) Hodges.

On May 26, 1960, Mayfield was in the water of Bluff Creek, a tributary of the Warrior River, teaching his son how to ski. His wife was driving his boat, which was sitting still in the water. Mayfield and his son were behind the boat with their heads sticking out of the water. Jennie Hodges, age 17, and daughter of Ed Hodges, was driving a 16-foot inboard motor boat up Bluff Creek. She was pulling a young boy, Richard Yielding, on skis, and two other Yielding children were in her boat. Her boat ran over Mayfield and the propeller seriously injured his back, and he was in the hospital a long time.

On October 12th, Mayfield sued Jennie Hodges, her father, Ed Hodges, and her father's company, Auto Electric & Carburetor Co., Inc. (hereinafter called Auto Electric) for $350,000.

This caused the filing of the bill for declaratory judgment by Virginia Hodges against U. S. Fire Ins. Co. (hereinafter called U. S. Fire), Lititz Mutual Ins. Co. and Implement Dealers Mutual Ins. Co. (known as the Jefferson Mutuals), Auto Electric & Carburetor Co., Ed Hodges and W. T. Mayfield, Jr.

The controversy here arises out of the proper interpretation and application of three policies of insurance. The first policy is what we call the dealers policy. It was issued to Auto Electric and provided coverage for all of the boats which the Marine Division of Auto Electric had for either sale or demonstration. The second policy was the boat policy issued by U. S. Fire and was issued to cover just such an accident as did occur. The big question as to the boat policy is whether coverage is limited to $10,000. The third policy was the homeowners policy covering Hodges, his wife and Jennie, and was issued by Jefferson Mutuals.

The trial court held that Jennie Hodges was entitled to the protection and coverage

of the dealers policy issued by U. S. Fire and the boat policy issued by U. S. Fire, and the homeowners policy issued by Jefferson Mutuals, and was also entitled to the benefit of the medical payment provisions of each of the policies, if Mayfield's medical expenses were recoverable; that U. S. Fire and Jefferson Mutuals are obligated to defend the action at law by Mayfield for the benefit of all the named insureds in their policies; that the rider on the boat policy, limiting liability to $10,000, was not applicable; that the primary insurer is U. S. Fire, and Jefferson Mutuals is the secondary insurer; that the insurer of the excess, if any, is U. S. Fire under its dealers policy.

Applications for rehearing were denied, U. S. Fire appealed and Jefferson Mutuals cross-appealed.

Appellant, under proper assignments of error, makes four major contentions which will be considered seriatim. Judge Giles wrote a full and comprehensive opinion, and the opinion, findings of fact and the decree covers 30 transcript pages. Since the parties are already familiar with what was there found and held, we are trying to limit this opinion to only such facts and holdings as to make it understandable to a stranger to the case.

■ Appellant's first contention is that it should not be required to provide protection and coverage under the dealers policy because that policy had no omnibus clause. It provided that "it is specifically warranted and agreed that the assured or a competent employee of assured will be, at all times, in charge of any vessel being navigated hereunder." It argues that at the time of the accident, the boat did not have a competent employee in charge of it because Jennie was not an employee of Auto Electric. She had never been paid a salary by them and she was using the boat for personal pleasure. It agreed that Jennie was a competent boat-handler and she was a champion water-skier, but denied that she was covered by the dealers policy.

Appellees answer that Jennie had demonstrated boats for her father and Auto Electric on many occasions, that this particular boat was up for sale and Auto Electric was willing to sell it to any customer who presented himself, and that the boat had been moved to the Hodges dock on Bluff Creek with Hodges' knowledge and the knowledge of Auto Electric.

■ A corporation in its relations to the public is represented and can act only through its duly authorized servants, agents or employees. Trans-America Ins. Co. v. Wilson, 262 Ala. 532, 80 So.2d 253; Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323.

■ Contracts of insurance are liberally construed in favor of the assured and, if doubtful, such contracts are construed against the insurer. Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; McKee v. Exchange Ins. Ass'n, 270 Ala. 518, 120 So.2d 690.

It is sufficient to say that there was sufficient evidence both as to the "assured" or "a competent employee" being in charge of the boat to authorize the lower court to hold that appellant is obliged to defend Auto Electric and Jennie Hodges under the policy in view of the allegations of the original complaint that Auto Electric was liable because of the negligence of Jennie Hodges, a "servant and agent" of Auto Electric. As to who was actually in charge of the boat or whether Jennie was an employee are questions to be finally determined by a jury in the main case. But the trial court's ruling in this declaratory judgment suit was correct under the evidence presented.

■ Appellant's second contention is that the court erred in not limiting the liability under the boat policy issued by U. S. Fire to $10,000 in accordance with the provisions of a rider attached to the policy which limited the liability to that amount when the boat was engaged in water skiing.

The question presented here involves the validity and effectiveness of an oral contract for insurance between Ed Hodges and Sevier, the general agent of U. S. Fire.

Hodges told the general agent that he was going to take the boat, which was later involved in the accident, out of stock and use it on the Warrior River at Bluff Creek for family use for water skiing, for demonstrations and other purposes and was doubtful if Auto Electric had enough insurance to cover such uses. Sevier agreed and suggested coverage of $10,000 and $20,000. Hodges said anything less than $100,000 would be inadequate. Sevier then quoted him a premium rate of $75 and Sevier testified that he told them (Auto Electric through Ed Hodges) that "they had coverage as of that time, they were bound as of that time," which was May 23, 1960.

Sevier ordered the policy from Atlanta. It was sent to Birmingham and delivered to Sevier on May 27th. The next morning as Sevier was inspecting and countersigning the policy, he was notified of the accident. Therefore, the loss occurred under the oral binder.

The policy did contain the rider limiting liability involving skiing to $10,000, under a company rule one month old, but Sevier had never heard of such a rule, had quoted a premium rate for coverage without any limitation, which had been accepted, and when the policy was delivered to Auto Electric on June 2, 1960, Sevier told Hodges that the rider did not alter coverage of $100,000 because it only applied where a water skier being towed by the insured boat was injured. Sevier had consulted with the state agent of U. S. Fire before agreeing to issue the policy and again after the accident and before delivering the policy to Auto Electric.

The power to make oral contracts of insurance as well as agreements to insure is sustained in this state. Liverpool & London & Globe Ins. Co. v. McCree, 210 Ala. 559, 98 So. 880, and cases there cited.

In that case we also said, in referring to the stipulations of a policy to be subsequently written up and delivered, that it will be presumed, in the absence of stipulations to the contrary, that the parties contemplated such form of policy containing such conditions and limitations as are usual in such cases for the insurer to issue at the time or in policies previously used by the parties.

Appellant contends that the coverage on the boat policy was limited to that to which their ordinary policies were limited.

We quote from two sections of Couch On Insurance 2d, § 14:16, p. 592, and § 14:17, p. 594:

"* * * A parol contract of, or for, insurance, in the absence of special agreement, calls for the contract as expressed in policies commonly issued by the company on similar risks, and is to be regarded as made upon the terms, and subject to the conditions, in the ordinary forms of policies, or the standard form where one has been prescribed. * * *"

"To the rule that an oral contract is assumed to be based on the customary or standard form issued by the insured (sic insurer), an exception is made when it is shown that an authorized agent of the insurer has agreed to different terms. * * *"

Here, there was a special agreement. There was a meeting of the minds on coverage not less than $100,000, the parties knew the boat would be used for skiing and the amount of the coverage was not only agreed upon, but the premium charged was based on full and not limited coverage. In Globe & Rutgers Fire Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827, we said:

"In this state it has long been recognized that a verbal contract of insurance, as well as a verbal contract to insure, can be made, and will be en-

forced, when and if all the terms of the contract are agreed upon. This right existed at common law and has not been changed by statute. The rate of premium, duration of the policy, nature of the risk, the property, and location of the same, as well as the amount of insurance must be agreed upon. When the minds of the contracting parties reach such an agreement, a valid contract of insurance has been made and may be enforced. [Citing cases]."

Here, the undisputed evidence is that the parties agreed on the amount of $100,000 insurance and that was the oral contract.

■ Appellant's next contention is that the court erred as to the matter of the applicability of the so-called "other insurance" clauses of the boat policy and the homeowners policy. Appellant contends that this consisted of double insurance and the liability, if any, should be prorated between the two policies. Appellees say that the double insurance feature only applies when the insured and the subject matter are the same and that here, the boat policy was issued to Auto Electric and the homeowners policy was issued to Hodges, as an individual.

The provision in the boat policy reads:

"If the Assured has other insurance (except under this Policy) against a liability covered by this Protection and Indemnity Insurance, the Company shall not be liable under this Protection and Indemnity Insurance for a greater proportion of such loss than the applicable limit of liability stated in this Policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The same provision in the homeowners policy reads:

"If the Insured has other insurance against a loss covered by this policy, this Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The trial court held that U. S. Fire was the primary insurer under the boat policy and should the limits of that policy be insufficient to pay the judgment, if one be recovered, then the Jefferson Mutuals would be liable as the secondary insurer.

This particular question of co-insurance has not been presented directly to this court prior to this case. There is dicta in Pearl Assurance Co. v. Hartford Fire Insurance Co., 239 Ala. 515, 195 So. 747, but it is not applicable to the question here presented.

It will be noted that each of the co-insurance provisions in the two policies says that "if the Assured has other insurance" and "if the insured has other insurance." The "Assured" in the boat policy was Auto Electric, a corporation; the "insured" in the homeowners policy was Ed Hodges, his wife and their daughter. Certainly the insureds in both policies were not the same.

■ The lower court conceded, and we agree, that there is a diversity of opinion on this question in other jurisdictions, but we adopt the rule that "other" or "double" insurance under those provisions exists only where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk; and that the "other" insurance clause in the policies referred only to other insurance taken out by the insured named in that policy. Blue Anchor Overall Company, Inc. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, 123 A.2d 413, 59 A.L.R.2d 546; Bituminous Cas. Corp. v. Travelers Ins. Co., D.C., 122 F.Supp. 197; Automobile Ins. Co. v. Springfield Dyeing Co., Inc., 3 Cir., 109 F.2d 533; Export Leaf Tobacco Company v. American Ins. Co., 4 Cir., 260 F.2d 839; Oakley v. Fireman's Insurance Company, Sup., 70 N.Y.S.2d 458; American Alliance Ins. Co. v. Brady Transfer & Storage Co., 8 Cir., 101 F.2d 144; Lucas v. Garrett, 209 S.C. 521, 41 S.E.2d

212, 169 A.L.R. 660; Couch, Cyclopedia of Insurance Law, Vol. 5, § 1039, p. 3634. The two policies here covered different insureds.

■ Appellant's final contention is that the court erred in holding that complainant would be entitled to the benefit of the medical payment provisions "of each of said policies," as well as the named insureds, for the medical expenses alleged to have been incurred by Mayfield.

It was error to say "of each of said policies" because there is no provision in the dealers policy for medical payments.

The provision in the boat policy provides for medical payments for each person "who sustains bodily injury caused by accident while in or upon, boarding or alighting from, the vessel insured hereunder * * *."

The only argument presented in brief in support of the holding is as follows: "Construing the words most favorably to the insured, the word 'upon' applies to a person having violent bodily contact with the vessel as Mayfield did in the instant case." We cannot agree. Mayfield did not come within any of the categories described in the policy. We hold that the medical payments provision in the boat policy does not have application in this case and the decree is modified to that extent; and as thus modified is affirmed.

### 6 Div. 932–A

■ The single question raised in this cross-appeal is: Does the homeowners policy which insured Ed Hodges, his wife and his daughter provide any coverage for the accident in which Mayfield was injured?

The policy contained the following exclusion, which, if applicable, would not provide coverage: "Water craft owned by or rented to an Insured, while away from the premises, if with inboard motor power exceeding 50 horsepower." The boat did have an inboard motor in excess of 50 horsepower. So the dispute is whether the boat was "owned by an insured" and whether it was "away from the premises" at the time of the accident.

Cross-appellants contend that the boat was owned by Ed Hodges even though title to it was in Auto Electric. This argument is based upon the fact that Hodges owned 77 per cent of Auto Electric and he was, in fact, the owner of the boat.

The evidence before the trial court showed that Auto Electric bought the boat, registered it, mortgaged it, demonstrated it, held it in inventory for sale, and advertised it for sale.

The fact that Hodges owned 77 per cent of the stock of Auto Electric does not make him the alter ego of the corporation.

■ The insurance company prepared the policy and used the word "owned." Courts will construe a contract of insurance strictly against the insurer and liberally in favor of the insured. 12 Ala.Dig., Insurance, ⟨key⟩ 146(3). We have also held that words of the policy must be given their ordinary and generally understood meaning, and strained or unusual construction should not be indulged in favor of either insurer or insured. Commercial Standard Ins. Co. v. New Amsterdam Cas. Co., 272 Ala. 357, 131 So.2d 182.

It is sufficient to say that we think the trial court did not err in holding that the boat was owned by Auto Electric and not by Hodges. Saint Paul-Mercury Indemnity Co. v. Heflin, D.C., 137 F.Supp. 520; Farley v. American Auto Ins. Co., 137 W.Va. 455, 72 S.E.2d 520, 34 A.L.R.2d 933; Fleckenstein v. Citizens' Mut. Automobile Ins. Co., 326 Mich. 591, 40 N.W.2d 733.

Having decided the question of the owner of the boat, it is not necessary that we decide the question of whether it was away from the premises because that requirement was in the conjunctive with the requirement of ownership.

250

No reversible error appears in the cross-appeal aspect of the case.

The decree of the trial court relating to medical payments is modified by eliminating Item 5 of the final decree, but is affirmed as to all other items in cases 6 Div. 932 and 6 Div. 932-A.

Modified and affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.