188 So.2d 537

**SOUTHERN GUARANTY INSURANCE COMPANY**

v.

**Hugh H. JONES et al.**

**6 Div. 249.**

Supreme Court of Alabama.

June 16, 1966.

London, Yancey, Clark & Allen, Birmingham, for appellant.

Jas. M. Fullan, Jr., Birmingham, for appellee Jones.

MERRILL, Justice.

In this appeal, the appellant is Southern Guaranty Insurance Company and the appellees are Hugh H. Jones, plaintiff below, and Jerry L. Wallace, defendant below. Appellee Jones recovered a judgment against appellee Wallace for $4,000 as a result of a collision between Jones' automobile and a pickup truck driven by Wallace. After the judgment, Jones caused a writ of garnishment to issue against appellant, Southern Guaranty Insurance Company, which had issued a policy of liability insurance to Wallace. The trial court decided against the insurer and it appealed. Appellee Jones filed a cross appeal.

Appellant denied that it was indebted to Wallace or that it was liable to pay off the judgment. Appellant also sought to transfer the cause to equity, and a few days later, sought to have this proceeding consolidated with a declaratory judgment action it had filed, alleging that the matters and things in both actions were identical and concerned the same parties. The motions to transfer and to consolidate were overruled.

After appellant, the garnishee, had filed its answer, the issues were made up, the cause was heard and submitted on stipulations of fact and oral testimony to the court without a jury.

Prior to submission, appellant requested a special finding of facts as provided by Tit. 7, § 262, Code 1940, and on July 14, 1965, the court made the special finding of facts and rendered the decree.

The undisputed facts were that on December 22, 1961, the defendant, Jerry L. Wallace, while operating a one-half ton Chevrolet pickup truck, collided with the plaintiff's automobile. The truck driven by Wallace was owned by one John Falls, who was the owner of a service station. Prior to the accident, Wallace left the place of business of John Falls at 1512 Bessemer Road and drove east to 1717 Bessemer Road to start an automobile belonging to a third party. After starting the car, Wallace then drove to his home located at 4804 Court S, Center Park, where he had something to eat and left some money with his wife. 4804 Court S is located to the south of Bessemer Road and several blocks east of 1942 Bessemer Road, the place where the accident occurred. Wallace left his home and drove in a northerly direction to Bessemer Road and entered Bessemer Road at a point several blocks to the east of 1942 Bessemer Road. The defendant then proceeded in a westerly direction along Bessemer Road when the accident happened at 1942 Bessemer Road. Immediately after the accident, Wallace reported it to Southern Guaranty Insurance Company.

In a statement by Jerry L. Wallace, he said that his personal car was broken and that he used Mr. Falls' truck to go home to lunch after he had started a car for a third person. This was the second time he had used the truck in order to go home for lunch. Wallace stated that the only times he used the truck for personal use was during the two or three days that his car was broken down

At the time of the accident, John Falls had in force and effect with United States Fidelity & Guaranty Company a family automobile policy, which did not describe the pickup truck involved in the accident, but which was acquired during the period the policy was in effect. John Falls immediately reported the accident to U. S. F. & G. but coverage was denied.

The trial court ruled that appellant was indebted to Wallace on account of the provision in its policy which reads as follows:

"TEMPORARY SUBSTITUTE AUTOMOBILE—means an automobile not owned by the named insured while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The court also ruled in a special fact finding that Wallace was not entitled to protection of the policy of his employer, John L. Falls, with the United States Fidelity & Guaranty Company as an "additional assured," on the ground that the insurance policy did not purport to cover the truck involved in the accident.

Appellant's twenty-one assignments of error are grouped and argued in five different sections.

■ It is first contended that garnishment is not a proper remedy, and that the exclusive remedy is under Tit. 28, § 12, Code 1940, as amended, which provides:

"Upon the recovery of a final judgment against any person, firm, or corporation by any person including administrators or executors, for loss or damage on account of bodily injury or death, or for loss or damage to property, if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

Appellant relies on the statement in the opinion in Reed v. Hill, 262 Ala. 662, 80 So.2d 728:

"Petitioner sued Howell in a court of law. He has shown no right to a legal cause of action against Howell's insurance carrier. See 46 C.J.S. Insurance § 1191 and Goodman v. Georgia Life Insurance Co., 189 Ala. 130, 66 So. 649. The only right we know that petitioner could have against the insurance carrier is the equity proceeding provided for in

§ 12, Title 28, Code 1940. That section gives to the plaintiff in judgment a vested interest by way of hypothecation in the amount due the insured by the insurer after the rendition of the judgment against the insurer. Macey v. Crum, 249 Ala. 249, 30 So.2d 666; George v. Employers' Liability Assur. Corp., 219 Ala. 307, 122 So. 175, 72 A.L.R. 1438. This statutory proceeding is to enforce that right or interest by way of an equitable lien created by the statute and enforceable only in equity. * * *"

In the cited case of Macey v. Crum, 249 Ala. 249, 30 So.2d 666, the opinion, by the same Justice who authored Reed v. Hill, supra, states:

"* * * The authorities are general that one who recovers a judgment for damages may garnish the judgment defendant's claim on a policy or agreement insuring him against liability (as distinguished from indemnity against loss) for damages of the kind recovered against him by the plaintiff (Booker T. Washington Burial Ins. Co. v. Roberts, 228 Ala. 206, 153 So. 409; 38 C.J.S. Garnishment § 110, p. 318, § 110 d) and the rule has been applied to automobile liability policies, after a final judgment against the insured, for coverages under the policy." [Citing over 20 authorities].

And in the *Roberts* case, 228 Ala. 206, 153 So. 409, this court said:

"It results from those principles that if this garnishee made a valid contract with defendant, by which it agreed to pay the death claims which had accrued on March 15, 1932, and breached that contract, defendant had a cause of action in debt, or assumpsit, which was subject to the garnishment. Plaintiffs were beneficiaries of that agreement, and could have sued the garnishee for its breach, but that was not the only remedy available to them to collect their debt. The defendant continued to be liable for it. Plaintiffs had the right, as they did, to

pursue the claim against defendant to judgment and to treat the garnishee as a debt[or] to defendant as for the breach of that contract. * * *"

In Mattox v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 276 Ala. 172, 160 So.2d 458, where the same garnishment proceedings as in the instant case were used, this court said:

"The right of Drexal and Elizabeth Mattox to proceed against the Casualty Insurance Company by way of garnishment was not questioned in the trial court and is not questioned here. See Macey v. Crum, 249 Ala. 249, 30 So.2d 666."

The issue was not raised in that case, but the doctrine of Macey v. Crum, supra, was recognized. We hold that the procedure provided in Tit. 28, § 12, is not exclusive, and that garnishment proceedings may be utilized in cases of this type by the plaintiff in judgment if he so elects.

The next group of assignments of error are 2, 3, 6, 7 and 8. They are argued together. No. 2 charges error in the sustaining of objections to the introduction in evidence of appellant's Exhibit 2. The record affirmatively shows that "said document was received in evidence and marked 'Garnishee's Exhibit 2,'" Thus, this assignment is without merit. Assignments 6, 7 and 8 are unrelated as they charge error with certain findings of fact.

■ Where unrelated assignments of error are argued together and one is without merit, the others will not be considered. Callahan v. Booth, 275 Ala. 275, 154 So.2d 32.

■ Assignments 4, 13, 19 and 20, and the arguments thereunder, raise the question of the sufficiency of the evidence to support findings that (1) Wallace was driving a temporary substitute automobile within the definition of his policy with appellant; and (2) that he was not engaged in the automobile business at the time of the collision.

Appellant's policy issued to Wallace carried this provision, which we have already quoted but repeat for clarity of understanding:

"TEMPORARY SUBSTITUTE AUTOMOBILE—means an automobile not owned by the named insured while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The stipulation reveals that Wallace's automobile, described in appellant's policy, had been broken down for about four days prior to the accident. Wallace's statement shows that he used the pickup truck which was involved in the accident twice, the second time being the day the accident occurred. He said, "I borrowed Mr. Falls' truck to go home to lunch on the day the accident happened," and that the only time he used the truck for his personal business was during the days his own automobile was out of commission.

The trial court found that the pickup truck was a temporary substitute automobile under the policy and we cannot say that such a finding constituted reversible error.

■ Having reached this conclusion, it probably is not necessary to consider the second finding that Wallace was not engaged in the automobile business at the time of the collision. However, we treat the question briefly because much argument is devoted in briefs to the question.

Appellant's policy shows that Wallace was a service station attendant or in the automobile business, defined therein to mean "the business of selling, repairing, servicing, storing, or parking of automobiles." There was also an exclusion in the policy that it did not apply to an accident arising out of the operation of an automobile business. So if the pickup truck was

not a "temporary substitute automobile," there would be no coverage if it were being used in the automobile business at the time of the collision.

Wallace went two blocks east on Bessemer Road to answer a service call to his employer. He started the stalled automobile and then Wallace went several blocks further east and south to his home at 4804 Court S, Central Park, where he ate lunch and left some money with his wife. He departed his home journeying north until he turned west on Bessemer Road at a point several blocks east of where the accident occurred. The truck collided with appellee's automobile two blocks east of where he had finished his service call. There is no question but that he deviated from his master's business when he finished his service call and that he had not returned to that point when the collision occurred.

In Bell v. Martin, 241 Ala. 182, 1 So.2d 906, we said:

"It is established in this jurisdiction that where there is an abandonment of the master's business for personal reasons of the servant or agent in question, the employment is suspended and the master is not liable for the negligence of such agent or servant during such suspended employment and during the time of his departure from the master's business. Each case must be ruled by its 'own peculiar' or particular facts, and when a servant has abandoned his employment by the master (Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757), *the mere fact that he is returning* thereto, does not of itself reinstate the servant, agent or agency in his master's employment and establish the engaging in the master's business so as to subject the master to liability and for damages resulting after the departure and before the return is accomplished as of fact."

There was ample evidence to support the trial court's application of the rule of Bell v. Martin, supra, and we find no error to reverse in the court's holding that, under the evidence, Wallace was not in his employer's business at the time the collision occurred.

■ Assignments of error 5 and 12 charge error in the court's finding that Wallace, the driver of the pickup truck, was not covered by a family automobile policy issued by U.S.F. & G. Co. to his employer Falls.

Under the stipulated facts, the pickup truck was not described in the policy and the court gave additional reasons why there was no coverage under that policy.

This question arose because of the provision in appellant's policy relating to "Other Insurance," and appellant was seeking to show that coverage of the pickup truck by the U.S.F. & G. policy would reduce appellant's liability.

Two of the reasons given by the trial court was that "(e) It affirmatively appears that Jerry L. Wallace is not the named insured in said policy. (f) It does not appear that Jerry L. Wallace was a relative of the named insured, resident in the named insured's household."

On the question of "other" insurance, we said in United States Fire Ins. Co. v. Hodges, 275 Ala. 243, 154 So.2d 3:

"The lower court conceded, and we agree, that there is a diversity of opinion on this question in other jurisdictions, but we adopt the rule that 'other' or 'double' insurance under those provisions exists only where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk; and that the 'other' insurance clause in the policies referred only to other insurance taken out by the insured named in that policy. * * *"

Here, the insured in the U.S.F. & G. policy was Falls, not Wallace, and the vehicle was a 1955 Ford Fairlane Tudor Hardtop— not a pickup truck.

We find no reversible error in the trial court's finding that the U.S.F. & G. policy was not "other" insurance covering the driver Wallace and the pickup truck.

This disposes of the main appeal and we next consider the appellee's cross appeal.

The first cross assignment charges error in the calculation of interest. The judgment was for $4,000 plus interest. The sum should have been $4,340 instead of $4,200 and the judgment will be reversed and the cause remanded only for this correction of the amount of the judgment. Appellant concedes that this error should be corrected.

■ The second cross assignment of error charges that the trial court erred in granting appellant's petition for an extension of time for filing the transcript of the evidence.

The trial court ruled after a hearing on the petition:

"The court is of the opinion that the plaintiff will not be prejudiced by allowing the movant additional time to file the transcript of the evidence, and in so permitting it would assure that justice be done to all parties in permitting a full and complete review by the Supreme Court."

Without going into the particulars, we hold that the trial court did not abuse its discretion in granting the petition for an extension of time in filing the transcript of the evidence. The statute, now listed at Tit. 7, § 827(1a), gives the trial court the right to extend the time of filing the transcript of the evidence for cause. We have held that the authority to extend the time for such filing rests in the trial court and not in the appellate court. Johnson v. State, 269 Ala. 1, 111 So.2d 610; Watkins v. Kelley, 262 Ala. 524, 80 So.2d 247.

## Motions

Appellee Jones filed motions to dismiss the appeal, to strike appellant's brief and to strike the transcript.

The motions to dismiss the appeal require no discussion except to say they are without merit.

■ One ground of the motion to strike appellant's brief is that it "does not contain a one and one-half inch margin."

It is true that there is not a one and one-half inch margin at the top, or bottom or the right side of every page of appellant's brief. But the margin this court is primarily interested in is the margin on the left side of the pages in the briefs. Supreme Court Rule 8 requires that the "brief shall be bound on the side." It is necessary to preserve a margin on the left wide enough for the brief to be bound and still be legible. We are not disposed to strike any brief because the marginal widths of the pages of briefs do not conform exactly with Rule 8.

The grounds urged for striking the transcript raise the point that Exhibit F, referred to in the stipulation, is not included in the transcript. The pertinent part of the stipulation reads:

"It is also agreed by the parties that the testimony of Jerry L. Wallace and John Falls given at the trial of this case commencing on February 12, 1964 as transcribed by Birmingham Court Reporting Company, a copy of which is furnished herewith and marked Exhibit 'F', upon offer by any of the parties hereto may be considered as evidence in this case, subject to valid objections as to relevancy."

Exhibit F is not in the transcript, but nowhere in the record was an offer by any party to introduce it in evidence. Since it was not offered in evidence, no one is prejudiced by its omission from the transcript, because of the stipulation that it

584

would be considered as evidence only "upon offer by any of the parties."

The motions of appellee Jones are denied.

The judgment of the trial court is affirmed in all respects except as to the amount of the judgment, and the cause is remanded solely for the purpose of correcting the amount of the judgment to read $4,340 instead of $4,200.

Affirmed in part; reversed in part and remanded for the correction of the amount of the judgment.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.