252 So.2d 631

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**

v.

**AUTO–OWNERS INSURANCE CO.**

6 Div. 643.

Supreme Court of Alabama.

Sept. 9, 1971.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellant.

**478**

London, Yancey, Clark & Allen, Birmingham, for appellee.

LAWSON, Justice.

This is an appeal from a decree rendered in a declaratory judgment proceeding which was instituted for the purpose of obtaining judicial declarations as to the liability and priorities of two automobile liability insurance policies issued by different companies.

The facts out of which this litigation arose were stipulated and are substantially as set out below.

On May 7 or November 7, 1966, Hiram Dodd, Jr., while operating a 1965 Pontiac automobile with the permission of its owner, Patricia Jones, was involved in an accident in which a passenger in the Pontiac, Carl Rouss, received personal injuries. We cannot be certain of the month in which the accident occurred. In some places in the record May 7, 1966, is the day it is said the accident occurred, while in other places November 7, 1966, is said to have been the day on which the accident happened. The briefs make no reference to this discrepancy.

As a result of the accident, two damage suits were filed against Hiram Dodd, Jr., and Patricia Jones, one by Carl Rouss, a minor, and the other by Jack Rouss, the father of Carl Rouss.

At the time of the accident Auto-Owners Insurance Company had in force and effect an automobile liability policy wherein Patricia Jones was the named insured and the 1965 Pontiac was the described automobile. According to the declarations part of the policy, coverage for personal injury to each person was limited to $10,000 and coverage for such injuries was limited to $20,000 for each accident.

Coverage A of the Auto-Owners policy relates to bodily injury liability and as to such coverage the company agreed to defend with counsel of its own choice in the name of the assured and on her behalf any suit against her alleging personal injury and seeking damages on account thereof "when the company is liable to the assured in case of judgment. * * *"

In the policy the word "Assured" was defined in a clause frequently referred to as the omnibus clause, in part as follows:

"(1) wherever used in Coverages A and * * * the named assured and any person using the automobile and any person or organization legally responsible for its use, provided the actual use thereof is with the permission of the named assured or if the named assured is an individual, with the permission of an adult member of the household who is not a chauffeur or domestic servant. The provisions of this paragraph shall not apply: (a) to any person or organization with respect to any loss against which he has other valid and collectible insurance, * * *" We will refer to proviso(a), *supra,* as an escape clause.

Condition 16 in the Auto-Owners policy in pertinent part reads:

"16.   OTHER INSURANCE.

"If the assured has other insurance against a loss covered by Coverages A, * * * of this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *"

The language just quoted constitutes what is often referred to as a pro rata clause and we will sometimes hereinafter so refer to it.

On the day of the accident, Mrs. Mary Martin Dodd, mother of Hiram Dodd, Jr., had an automobile liability policy in force with State Farm Mutual Automobile Insurance Company wherein in regard to bodily injury to other persons (Coverage A —Insuring Agreement I) the Company obligated itself "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons; * * * and to defend any suit against the insured alleging such bodily injury * * * and seeking damages which are payable hereunder * * *."

By virtue of the provisions of "Insuring Agreement II—Non-owned Automobiles" of the State Farm policy, Coverage A applied to the use by Hiram Dodd, Jr., of a non-owned automobile (the Pontiac), since he was a resident of the household of his mother, Mrs. Mary Martin Dodd, who was the person named in the declarations part of the policy.[1] The declarations page of the State Farm policy shows, among other things, that the described automobile is a 1963 Chevrolet and that the limits of liability are $50,000 for injury to each person and $100,000 for each accident.

As to Insuring Agreements I and II, the State Farm policy contained the following language in Condition 14:

"Other Insurance.   If the insured has other insurance against liability or loss covered by this policy, the company under all coverages except Coverages C and M, shall not be liable for a greater proportion of such liability or loss than the applicable limit of liability bears to the total applicable limit of liability of all collectible insurance against such liability or loss.   [pro rata clause]

*       *       *       *       *       *

"All of the foregoing provisions and all coverages are subject to the following:

*       *       *       *       *       *

"(1) coverages A and B applies to the use of a non-owned automobile by (a) the first person named in the declaration or,

"(b) if residents of the same household, his spouse or the relatives of either, * * *"

---

1.  "If the named insured is a person or persons and if during the policy period such named insured owns an automobile covered by this policy and classified as 'pleasure and business' such insurance as is afforded by this policy with respect to the owned automobile under:

"(b) The insurance with respect to a temporary substitute automobile, a trailer and a non-owned automobile shall be excess over other collectible insurance."

Clause (b), *supra*, constitutes what is commonly referred to as an "excess" clause.

It is apparent that Auto-Owners and State Farm, like many other liability insurance companies, have sought to limit their coverage where, in their opinion, their policy overlaps with a policy issued by another company. This effort to limit liability has created much confusion and has been the source of much litigation.

Auto-Owners and State Farm each claimed the other should defend the lawsuits brought by Carl and Jack Rouss and pay any judgment or judgments rendered therein. Being unable to resolve this dispute, Auto-Owners filed this bill for declaratory judgment against State Farm, Hiram Dodd, Jr., Carl Rouss and Jack Rouss, and by amendment against Patricia Jones.

In its bill Auto-Owners prayed that the court decree that State Farm is bound and obligated to defend Hiram Dodd, Jr., and to pay all expenses and any judgment rendered therein against him, or in the alternative that the Auto-Owners policy be declared excess over coverage afforded by State Farm, or in the alternative that the policies of each insurer be declared to be pro rata with the other.

Answers of the individual respondents did not enter into the controversy to any appreciable extent, containing no more than general admissions and denials of allegations, but the answer of State Farm set forth policy provisions relied upon, asserting that by virtue of provisions of both policies, Auto-Owners was the primary insurer and coverage under the State Farm policy would be excess only, and not available until the limits of liability under the Auto-Owners policy had been exhausted.

The cause was submitted on an agreed stipulation of facts filed in writing on behalf of all parties, incorporating as exhibits copies of the two policies and the complaints in the two damage suits. No testimony was offered by deposition or otherwise.

The trial court rendered a final decree, which in pertinent parts reads as follows:

"THIS CAUSE duly came on to be heard and was argued and submitted for final decree upon pleadings, proof, stipulation of facts, etc., all as noted by the parties.

"Giving full scope to the opinions of United States Fire Insurance Company v. Hodge [sic], 275 Ala. 243; 154 So.2d 3, and Southern Guaranty [Ins. Co.] v. Jones, 279 Ala. 577; 188 So.2d 537, the Court is of the opinion that complainant is entitled to relief. It is accordingly,

"ORDERED, ADJUDGED, DE-CLARED AND DECREED by the Court as follows:

"1. That a bona fide justiciable controversy exists between the parties to this case appropriate to a declaratory decree.

"2. That the policy of insurance issued by respondent, State Farm Mutual Automobile Insurance Company, and the policy of insurance issued by complainant, Auto-Owners Insurance Company, a corporation, were in full force and effect on May 7, 1966, and both complainant and respondent State Farm are legally obligated to extend the benefits of coverage to respondent Hiram Dodd, Jr., and are under a legal duty to defend and to pay to the extent of the limits of liability under its policy, such damages as may be assessed in cases of Carl Rouss v. Hiram Dodd, Jr., et al, and Jack Rouss v. Hiram Dodd, Jr., et al.

"3. That any judgment or judgments entered against respondent Hiram Dodd, Jr., in the aforesaid law suits are to be pro rated between the complainant and respondent, State Farm in the ratio which

the limits of their policies bear to the total coverage of the two policies as follows: Respondent, State Farm is to pay five sixths (⅚) of any said judgment or judgments and complainant, Auto-Owners Insurance Company is to pay one-sixth (⅙) of any judgment or judgments.

"4. That one-half (½) of any monies spent in the defense of respondent Hiram Dodd, Jr., of the aforementioned law suits shall be paid by respondent, State Farm and one-half (½) of the money or monies spent in said defense by the complainant.

"5. That the costs of this cause be and the same hereby are taxed one-half (½) against complainant, Auto-Owners Insurance Company, a corporation, and one-half (½) against the respondent, State Farm Insurance Companies, for which let executions issue. * * *"

After its application for rehearing was overruled, State Farm appealed to this court, asserting that the trial court erred (1) in requiring the two insurers to pay any judgments rendered against Hiram Dodd, Jr., on a pro rata basis, five-sixths by State Farm and one-sixth by Auto-Owners; (2) in failing to hold that Auto-Owners was the primary insurer and that State Farm provided only excess insurance which would not be applicable until the limits of liability under Auto-Owners' policy had been exhausted; and (3) in failing to hold that State Farm provided only excess or secondary insurance which would not be applicable until the limits of liability under the Auto-Owners policy had been fully exhausted.

After the appeal was taken to this court, a settlement agreement was reached between all the parties which disposed of the law suits for a sum less than the limits of liability under the Auto-Owners policy. The agreement reserved for the decision of this court the liability of the respective insurers for payment of the settlement agreed

upon. The defense costs issue has not been argued.

Since we are concerned on this appeal with a dilemma which arises when the same tort-feasor may be covered by insurance policies issued by different insurance companies, each of which policies contains provisions which are referred to loosely or in a generic sense as "other insurance" clauses, we deem it appropriate to quote an annotator's introductory observations which show the different kinds of clauses which are sometimes referred to as "other insurance" clauses. We quote from 76 A.L.R.2d at p. 503:

"Automobile liability insurance policies frequently contain so-called 'other insurance' clauses, that is, clauses which purport to vary the coverage of the policy if there is another policy or other policies protecting the risk insured against. These clauses are of three principal kinds: (1) those providing that in the event of other insurance, the insurer issuing the policy in question is not liable at all, usually called 'escape' clauses; (2) those providing that in the event of other insurance, the coverage offered by the policy in question shall be 'excess' coverage, that is, the insurer is liable only if the loss is in excess of the limits of the other policy or policies, usually called 'excess' clauses; and (3) those providing that in the event of other insurance, the insurer issuing the policy in question shall be liable only for the proportion of the loss that represents the ratio between the limit of liability stated therein and the total limit of liability of all valid and collectible insurance covering the loss, usually called 'pro rata' clauses."

In United States Fire Insurance Co. v. Hodges, 275 Ala. 243, 154 So.2d 3, referred to hereinafter as the *Hodges* case or as *Hodges*, three insurance policies were involved, two of which contained provisions which we denominated "other insurance" clauses, but which were of the type frequently referred to as "pro rata" clauses.

The trial court ignored the "pro rata" clauses because the two policies did not cover the same interest, the same subject matter, the same risk and the same insured. The trial court did not prorate liability between the two companies, United States Fire and Jefferson Mutuals, but made United States Fire, whose policy covered the boat which caused the injury, the primary insurer and Jefferson Mutuals the secondary insurer.

On appeal to this court, United States Fire, the appellant, contended that liability, if any, should be prorated but the appellees, including Jefferson Mutuals, took the position that the "pro rata" clauses should not be held applicable for the reasons stated by the trial court.

We affirmed, thereby ignoring the "pro rata" clauses, saying:

"It will be noted that each of the co-insurance provisions in the two policies says that 'if the Assured has other insurance' and 'if the insured has other insurance.' The 'Assured' in the boat policy was Auto Electric, a corporation; the 'insured' in the homeowners policy was Ed Hodges, his wife and their daughter. Certainly the insureds in both policies were not the same.

"The lower court conceded, and we agree, that there is a diversity of opinion on this question in other jurisdictions, but we adopt the rule that 'other' or 'double' insurance under those provisions exists only where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk; and that the 'other' insurance clause in the policies referred only to other insurance taken out by the insured named in that policy. [Authorities cited] The two policies here covered different insureds." (275 Ala., 248–249, 154 So.2d 7)

In the *Hodges* case we dealt with several questions, but hereinafter when we refer to the *Hodges* holding we have reference to the holding to which we have already alluded, that is, that "other insurance" clauses come into play only when there are two or more insurance policies covering the same interest, the same subject matter, the same risk, and which policies were issued to the same named insured.

We applied the *Hodges* holding in Southern Guaranty Ins. Co. v. Jones, 279 Ala. 577, 188 So.2d 537, decided on June 16, 1966. *Hodges* was decided on May 30, 1963.

It would appear from the references made in the second paragraph of the decree here under review to *Hodges* and to *Southern Guaranty* that the trial court concluded that those cases dictated the conclusions which it reached. But we are not certain. If the court concluded that those cases required it to ignore the "other insurance" clauses in the policies of Auto-Owners and State Farm, it would seem that the court would have apportioned liability in the same manner as it did in *Hodges* by making Auto-Owners, which had issued the policy covering the automobile involved in the accident, the primary insurer and State Farm the secondary or excess insurer. But such is not the case. As appears from the decree, the trial court prorated liability between the two companies according to the ratio which the limits of their respective policies bore to the total coverage of the two policies. We do not understand why the trial court followed that course, but we see no benefit to be derived from an effort to rationalize the manner of proration of liability spelled out in the decree with the references in the decree to *Hodges* and to *Southern Guaranty*.

The decree in this case was rendered on September 6, 1968, after we had delivered the opinion in State Farm Mutual Auto. Ins. Co. v. General Mutual Ins. Co., 282 Ala. 212, 210 So.2d 688, to which we will sometimes refer hereinafter as *General Mutual*. In that case we quoted from the opinion in *Hodges* but not in connection with the *Hodges* holding with which we

are presently concerned. In fact, we made no mention of that holding in *General Mutual,* although the two insurance policies there involved were not issued to the same named insured and they both contained certain of the so-called "other insurance" clauses. General's policy, according to the opinion, contained an "excess insurance" clause, while State Farm's policy contained a "pro rata" clause and by an endorsement an "excess insurance" clause. If we had followed *Hodges,* we would have ignored those pro rata and excess clauses and in that event we would not have held that there could be proration between the two insurance carriers. But we did consider those clauses and we held that the "excess insurance" clause and the "pro rata" clause in State Farm's policy were contradictory; that the controlling provision in State Farm's policy was the "excess insurance" clause; that the "excess insurance" clauses in the two policies were mutually repugnant and that the loss should be prorated according to policy limits, following Lamb-Weston, Inc., v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485.

After the decree in this case was rendered by the trial court, we decided three cases wherein certain types of so-called "other insurance" clauses were involved. In none of them did we apply the *Hodges* holding.—State Farm Mut. Auto. Ins. Co. v. De La Cruz, 283 Ala. 167, 214 So.2d 909; American Mut. Liability Ins. Co. v. Milwaukee Ins. Co. of Milwaukee, 283 Ala. 414, 218 So.2d 129; Continental Nat. American Group v. Burleson, 283 Ala. 671, 220 So.2d 611.

In American Mutual Liability Ins. Co. v. Milwaukee Ins. Co. we affirmed a decree of the trial court which prorated liability between the two companies according to the ratio which the limits of their respective policies bore to the total coverage of the two policies. The policies were not issued to the same named insured and each of them apparently contained a pro rata type "other insurance" clause. The *Hodges* holding, if it had been applied, would not have justified an affirmance of the trial court's decree of proration if the matter of allocating liability between the two companies was directly at issue.

In *De La Cruz* and *Burleson* we refused to apply the *Hodges* holding on the ground that the "other insurance" clauses in the policies involved in those cases were different from the "other insurance" clauses set out in the opinion in *Hodges.* We refused to apply the *Hodges* holding because of that distinction, although the policies involved in *De La Cruz* and those involved in *Burleson* were not issued to the same named insured.

The so-called "other insurance" clauses with which we are concerned in this case are equally as distinguishable from the clauses considered in the opinion in *Hodges* and we could avoid the application of the *Hodges* holding here in the same way as we did in *De La Cruz* and in *Burleson,* but we are of the opinion that in view of the fact that we have not applied the *Hodges* holding since *Southern Guaranty,* we should face up to the question as to whether or not the *Hodges* holding should be expressly overruled. In *Hodges,* in regard to the "other insurance" clause question, we noted that "there is a diversity of opinion on this question in other jurisdictions." Since this new question was not the main or controlling point raised in *Hodges,* we entertained the view at the time that the adoption of the same interest, the same subject matter, the same risks and the same named insured rule made for certainty and would simplify the determination of like questions with which the bar and bench would inevitably be confronted.

But with the changing of policy provisions and the testing of the rule in *Hodges,* as shown above, we are now convinced that the *Hodges* holding with which we are concerned here is too narrow and should not be followed. That holding is hereby overruled.

With the *Hodges* holding out of the way, we come to the question as to the extent of liability, if any, of Auto-Owners and State Farm in this case.

Both policies contain a pro rata clause. Those clauses, standing alone, for present purposes can be said to be so worded as to convey the same meaning and have the same effect.

As heretofore shown, Auto-Owners' policy covered the automobile which was involved in the accident. In the omnibus clause in Auto-Owners' policy coverage was afforded to Hiram Dodd, Jr., because the "actual use" of the automobile at the time of the accident was with the permission of the named assured, Patricia Jones, unless such coverage was excluded by virtue of proviso (a) of the omnibus clause, to which proviso we have heretofore referred as an escape clause and which has been set out above, but which we again quote in pertinent part: "The provisions of this paragraph [omnibus clause] shall not apply: (a) to any person or organization with respect to any loss against which he has other valid *and collectible insurance,* * * *" (Emphasis supplied)

State Farm's "other insurance" clause contains provisions which we have heretofore referred to as an "excess clause" and which has been quoted above, but which we deem it appropriate to quote again. In pertinent part it reads:

"All of the foregoing provisions and all coverages are subject to the following:

*    *    *    *    *    *

"(b) The insurance with respect to a temporary substitute automobile, a trailer and *a non-owned automobile* shall be excess over collectible insurance." (Emphasis supplied)

We entertain the view that our case of Continental Nat. American Group v. Burleson, *supra,* dictates that the decree of the trial court here under review must be reversed. The facts in *Burleson,* with one or two exceptions which we do not believe to be material, are substantially like those in the case at bar.

Harry Ellis, Jr., while operating a vehicle owned by one Henson, collided with a vehicle occupied by Burleson and one Glover, who brought damage suits against Harry Ellis, Jr., and his father, Harry Ellis, Sr. Ellis, Jr., at the time of the accident, was driving Henson's car with Henson's permission. Henson was insured under a policy issued by Continental, which extended coverage to Ellis, Jr., under an omnibus clause. Ellis, Sr., had a family automobile policy issued by Alabama Farm Bureau Mutual Casualty Insurance Company, which extended coverage to Ellis, Jr., for the operation of non-owned automobiles. Thus, Ellis, Jr., who had not purchased either policy, was in a position comparable to that of Hiram Dodd, Jr., in the case at bar. Continental and Alabama Farm Bureau each claimed that the other was primarily liable, just as do Auto-Owners and State Farm in this case.

In a declaratory judgment proceeding instituted by Continental, the trial court held Continental to be the primary insurer and Alabama Farm Bureau to be the excess insurer. We affirmed.

Continental's policy contained a pro rata clause substantially identical to the pro rata clauses involved in the policies in the case at bar. Alabama Farm Bureau, relying on its excess clause, took the position that a non-ownership policy with an "excess clause" did not constitute "other valid and collectible insurance" within the meaning of that term as used in the Continental policy.

In resolving that controversy, Mr. Justice Bloodworth, writing for the court, said as follows:

"We are clear to the conclusion that the majority rule is that where an automobile owner has a policy with an omnibus clause, and an additional insured has a non-ownership policy providing

that it shall only constitute excess insurance over and above any other, valid, collectible insurance, the owner's insurer has the primary liability and the excess insurer secondary liability after the primary insurance is exhausted. By virtue of this rule, no consideration is given to the 'other insurance' clause in the primary policy, providing that if the additional insured has other valid and collectible insurance, the insurer is not liable except on a pro-rata basis because the insurance under the excess policy is not regarded as other collectible insurance, it not being available to the insured until the primary policy is exhausted. 8 Appleman, Insurance Law and Practice, supra; 16 Couch on Insurance 2d, supra; 76 A.L.R.2d, supra; United States Fidelity & Guaranty Co. v. Slifkin, (N.D.Ala.), 200 F.Supp. 563. As stated by Chief Judge Lynne in that case, at 200 F.Supp. 579:

" '* * * the overwhelming majority of the decisions from other jurisdictions have given full effect to the "excess insurance" clauses, making the insurer with the "pro rata" clause primarily liable to the full extent of its policy. * * * The theory of these cases is simply that by virtue of the "excess insurance" clause there is no other "valid and collectible" insurance within the meaning of that phrase as used in the "pro rata" clause. * * *'

"As stated in 16 Couch on Insurance 2d, at page 518, supra:

" '* * * As a general rule it is held that where an excess clause and a pro-rata clause appear in concurrently effective automobile liability policies, the pro-rata clause is disregarded and full effect is given to the excess clause, making the prorata policy the primary insurance.'

"We consider that these and numerous other well-reasoned authorities fully support the view which we take of this case, which is, that the trial court ruled correctly in the court below." (283 Ala. 674, 220 So.2d 614)

We take note of the fact that in Continental's policy was a provision which does not appear in Auto-Owners' policy, in that immediately following the Continental pro rata clause is this sentence: "The above shall not apply with respect to other insurance stated to be applicable to the loss only as excess insurance over any other valid and collectible insurance or on a contingent basis." (283 Ala. 675, 220 So.2d 615)

Referring to that clause, the opinion in *Burleson* says: "This clause simply provides that it [the pro rata clause] does not apply when other insurance involved is excess insurance." (283 Ala. 675, 220 So. 2d 615)

The absence of the clause last quoted above from Auto-Owners' policy does not affect this case, in our opinion. The clause is unnecessary, the same result being reached without it, as is recognized in the *Burleson* opinion in the following language:

"A most recent case Dairyland Mutual Insurance Company v. Andersen (1967), 102 Ariz. 515, 433 P.2d 963, involved an almost identical situation to that of the case at bar. There, a corporation's insurer, whose policy contained a 'pro-rata' clause, and the insurer of the driver of the corporation's car whose policy contained an 'excess' clause with respect to non-owned vehicles, were held not to be repugnant and the driver's policy was held 'excess' over the corporation's insurer. The Arizona Supreme Court there said that there is no ambiguity, the policies neither conflict nor are they inconsistent. The corporation's policy provided it would pay a proration of the loss where there is other valid and collectible insurance. The driver's policy likewise provided for pro-rata payment of the loss where there is other valid and collectible insurance but only if the insured owns the vehicle, as to non-owned vehicles it is 'excess' to any other insur-

**486**

ance. The court said that these 'other insurance' clauses are plain and unambiguous and must be applied as written.

"We might stop here by adding that we consider Dairyland Mutual Insurance Company v. Andersen, supra, as being a well-reasoned authority for the conclusion we have reached, but there is an additional factor in the case at bar. The Continental policy contains the provision above referred to specifically providing that its 'pro-rata' clause does not apply to such other insurance as is 'excess' insurance. Thus, the Continental policy clearly anticipates and provides for just such a contingency as has arisen in the case at bar.

\* \* \* \* \* \*

"We conclude with this observation of the Supreme Court of Arizona in Dairyland Mutual Insurance Company:

" '\* \* \* In light of the host of words which have been written on the subject, we express doubt as to whether anything further could be added which would substantially enlighten the bench or bar. \* \* \*' " (283 Ala. 675–676, 220 So.2d 610)

The reason why the clause last quoted above from the Continental policy makes no difference is that in reality we are simply confronted with the question as to whether the excess insurance provided by State Farm's policy in its "excess clause" constitutes "other valid and collectible insurance" as used in Auto-Owners' "escape clause." The vast majority of the courts have said that it does not, holding in effect that where one policy contains an "escape clause," and the other contains an "excess clause," the primary insurer is the company issuing the policy with the escape clause because excess insurance simply is not other valid and collectible insurance. This is in accord with the same reasoning which has already been approved by this court in *Burleson.* See 16 Couch on Insurance 2d, § 62:76, p. 521; 46 A.L.R.2d 1163, 1165.

The decree of the trial court is reversed and the cause is remanded with directions to enter a decree in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

All the Justices concur.