DAVID TOWNLEY, A MINOR OF THE AGE OF SEVENTEEN YEARS, BY WILLIAM TOWNLEY, HIS FATHER AND NEXT FRIEND, APPELLEE, v. LARRY W. WHETSTONE ET AL., APPELLEES, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, GARNISHEE-APPELLANT.

209 N. W. 2d 350

Filed July 20, 1973. No. 38953.

Fraser, Stryker, Marshall & Veach, for garnishee-appellant.

J. Michael Fitzgerald of Matthews, Kelley, Cannon & Carpenter, for appellee Townley.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

In this case, arising out of a garnishment action, the named insured, while his insured automobile was being repaired, had an accident while using another automobile not insured and owned by his father and mother, the father also being a named insured on the son's automobile which was being repaired. The question involved is the interpretation of the policy exclusion clause governing coverage of the use of a substitute automobile. The District Court held that the insurance company was liable under the terms of the policy and entered judgment for the appellee Townley. We affirm the judgment of the District Court.

The case was tried upon the following stipulated facts: In March of 1969, Larry W. Whetstone, a minor of the age of 17 years, purchased a 1964 Ford which was to be financed through the Stockyards National Bank in Omaha, Nebraska. Because of Larry's minority, Martin J. Whetstone, his father, signed the purchase agreement and cosigned the note to the Stockyards National Bank. A title for the 1964 Ford was then issued with Larry W. and Martin J. Whetstone appearing as coowners. On April 16, 1969, a policy of insurance was issued by appellant covering said 1964 Ford and naming Larry W. and Martin J. Whetstone as the insured. The premiums for this automobile insurance policy were paid by Larry Whetstone and the policy was in full force and effect on September 3, 1969, the date of the accident.

On the morning of September 3, 1969, Larry Whetstone was driving the 1964 Ford to school when it developed mechanical difficulties and became inoperable. The automobile was towed to the Whetstone residence and, upon arriving there, Larry requested permission from his mother to drive a 1958 Buick, owned by Martin J. Whetstone and his wife, to school and then to work.

This vehicle was not covered by any policy of insurance. Mrs. Whetstone granted Larry permission to drive the 1958 Buick and he then proceeded on to school.

After school, Larry was driving to work in the 1958 Buick when he was involved in an accident with David Townley, appellee herein. Appellee brought suit for damages and injuries incurred therein and obtained a judgment in the amount of $1,500 plus attorney's fees in the amount of $155 and interest at six percent. This action for garnishment ensued.

The issue here is very narrow. The appellant insurance company denies liability on the ground that the 1958 Buick, owned by the father, was not a "temporary substitute automobile" because, since the father was one of the named insureds on the son's automobile that it was "owned by the named insured," and therefore came strictly within the provisions of the exclusion provided in the "temporary substitute automobile" provision. The exclusion in the policy reads as follows:

"TEMPORARY SUBSTITUTE AUTOMOBILE — means an automobile not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

Appellant's contention, succinctly stated, is that because the 1958 Buick was owned by Martin J. Whetstone, and because his name appears as one of the named insureds on the policy covering the 1964 Ford, the Buick was an automobile owned by the named insured which could not qualify as a temporary substitute automobile under the substitution clause and therefore was excluded from coverage under the terms of the policy. In other words, the appellant argues that there is no ambiguity under the terms of the exclusionary provisions, and that the solution of this case lies simply in enforcing the clear and unambiguous terms of the policy.

...This appears to be a case of first impression in Nebraska. The only case found dealing with the precise issue before us is a West Virginia case, Farley v. American Auto. Ins. Co., 137 W. Va. 455, 72 S. E. 2d 520. A policy containing a substitution clause identical to that in the instant case had been issued in the names of Earl Farley and Harry Wallace to cover a 1950 Ford truck. While the described vehicle was being repaired, Farley drove a 1948 truck owned solely by Wallace and was involved in an accident. Suit was brought to recover under the policy when the insurance company denied liability. In holding that the demurrer of the insurance company was properly overruled, the West Virginia court said:

"Bearing in mind, the restrictive meaning of the phrase 'named insured', we think it would be illogical and untrue to say that Wallace and Farley, being the named insured, owned the substituted vehicle when it is admitted *that Wallace was the sole owner thereof.* We think that the substituted vehicle, in view of the foregoing, was not owned by the 'named insured' and therefore, according to the plain terms of the policy provisions permitting such substitution, the declaration states a cause of action and is good on demurrer." (Emphasis supplied.)

We find the reasoning of the court in Farley persuasive. This court has said on numerous occasions that if an insurance contract was prepared by the insurer, and it contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the insured will be adopted. American Standard Ins. Co. v. Tourner, 186 Neb. 585, 185 N. W. 2d 267; Morton v. Travelers Indemnity Co., 171 Neb. 433, 106 N. W. 2d 710. Here, as in Farley, *supra,* the named insured consisted of two people, Larry W. and Martin J. Whetstone. The contract of insurance could reasonably be construed as meaning that only both together, not either one alone,

constituted the "named insured" and therefore the 1958 Buick owned by Martin J. Whetstone was not a car owned by the "named insured." See, also, 12 Couch on Insurance 2d, § 45:237, p. 274.

It is argued that the above distinction made in the Farley case is superficial, that it is a devious distinction made for the purpose of avoiding the categorically explicit and unambiguous language of the exclusionary provision. We find the answer to this contention in a brief examination of the jurisprudential underpinnings of this clause. The problem presented is a familiar one in examining a statute or interpreting a provision in a contract. The insurer drew the clause. Its purpose is to prevent additional and nonpremium paid-for coverage for additional automobiles under the umbrella of the omnibus coverage provisions. It is also apparent that it is peculiarly applicable to family situations where various members of the family own and drive separate automobiles. This fundamental purpose should be and will be strictly enforced by the courts. The purpose of the provision and the mischief sought to be prevented are not present in this case. Undisputedly, under the stipulation, Larry's car was being repaired and it was necessary for him to use another automobile. Coverage was explicitly provided for this situation. We can find nothing peculiarly, directly, or indirectly related to the purpose of the provision in the fact that he was driving Martin J. Whetstone's Buick. This situation is even stronger because it appears that the father, Martin J. Whetstone, was on Larry's insurance contract only because Larry was a minor. An enforcement of the literal rhetorical meaning of the words in this clause would work an obvious injustice in the present case. A statute or a clause in an insurance contract always attempts, as clearly as possible, to express the change or the purpose within the range of the specific cases most likely to occur to the mind. And the parties have drawn their agreement or the Legislature may enact a statute and

if they have intimated their will or purpose, however indirectly, that will should be recognized and obeyed. Mere rhetoric or superficially arbitrary construction of the words in a statute or an agreement should not blind the courts to an examination of the real agreement and the purpose behind it. As Justice Holmes said in his classic statement in Johnson v. United States, 163 F. 30 (1908): "* * * it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." It is undeniably clear in the present case that the meaning and the purpose of this clause was not directly or indirectly violated by the use of the substitute automobile involved. The mischief sought to be prevented was avoided. The very purpose of the whole policy was to enable Larry to drive a substitute automobile when his was being repaired, and to afford the coverage in such a situation for which the parties paid their premiums. We therefore come to the conclusion that the appellant's contention, although persuasively argued and from a rhetorical point of view unanswerable, is not the proper solution in this case.

The judgment of the District Court is affirmed and the appellee is allowed a reasonable attorney's fee in the sum of $500 as part of the costs of this appeal. § 44-359, R. S. Supp., 1972.

AFFIRMED.

BOSLAUGH, J., dissents.