MADDOX, Justice.
This is an appeal from a decree in a declaratory judgment action which was instituted for the purpose of obtaining judicial determinations as to the coverage, applicability, and priority of payment of four insurance policies issued by two different companies. Plain tiff-appellee, Bituminous Casualty Corporation issued three of the policies. Defendant-appellant, National Indemnity Company, issued the other policy.
The parties entered into stipulations of all pertinent facts. The four policies were made part of the stipulation. The facts out of which this suit arose are as follows: On June 19, 1972, plaintiff-appellee, Bankhead *480 Forest Industries, and defendant, Marshall Frost, entered into a lease agreement whereby Frost leased to Bankhead a 1967 Kenworth tractor, s/n 204298. The amended lease agreement provided, among other things, that Frost would furnish such additional vehicles as Bankhead might reasonably request and that Frost would temporarily substitute another vehicle during the repair of any vehicle which might be rendered unserviceable. Paragraph 7(b) of the lease agreement required Frost as lessor to purchase and to maintain in full force and effect a policy or policies of public liability insurance for the protection of the lessee and lessee’s drivers with limits of not less than $100,000 for injury or death of one person and $300,000 for injury to or death of all persons killed in the same accident. Frost provided the requisite amount of insurance by means of a combination of two policies, one being a primary policy issued by Bituminous (No. 12369), and the other an excess policy issued by National. Bituminous policy No. 12369 and the National policy both listed the 1967 Kenworth tractor described in the lease in their schedule of automobiles. It is stipulated in the lease in their schedule of automobiles. It is stipulated that both policies insured the 1967 Kenworth tractor and that the lease agreement was in full force and effect at all times herein pertinent.
In July, 1973, the Kenworth tractor was involved in a collision and was heavily damaged. The Kenworth tractor remained inoperable from the date of the accident until December 17, 1973. Pursuant to the provisions of the lease agreement, Frost furnished Bankhead a 1972 GMC tractor while the Kenworth tractor was being repaired. Bankhead temporarily used it as a substitute for the Kenworth tractor. While the 1972 GMC tractor was being operated by Theo Jackson Lovett, a Bankhead employee, who was acting within the line and scope of his employment, the GMC tractor was involved in a collision with an automobile driven by Nina G. Morrow. In the accident Mrs. Morrow sustained personal injuries and her minor child, Billy Joe Morrow, was killed. Charles J. Morrow, on behalf of his minor child, and wife, and Nina Morrow, individually, filed actions against Bankhead and Lovett in the circuit court of Morgan County. A $40,000 judgment was rendered in favor of Charles Morrow which included both claims. In addition, Mrs. Morrow was awarded a judgment of $10,000.
Bituminous, in the action brought by Charles Morrow, admitted that there was coverage under Bituminous policy No. 12369. Accordingly, Bituminous paid both judgments and then proceeded to determine its rights to contribution or reimbursement from National Indemnity Company. National denied coverage on the ground that the 1972 GMC tractor was owned by Marshall Frost, who was one of the named insured, and that this prevented the GMC tractor from being a “temporary substitute automobile” as defined in Bituminous policy No. 12369, and therefore, no coverage was available under the National excess policy.
National filed a counterclaim alleging that at the time of the collision between the GMC tractor and the Morrow automobile there was in full force and effect Bituminous policy No. 12370, which was issued to Marshall Frost as the named insured. This policy had limits of $10,000 per person and $20,000 per accident and listed the 1972 GMC tractor as one of the insured automobiles. National further alleged that Bituminous had issued a general liability policy (No. 726121) to Bankhead covering its entire fleet of vehicles. Bituminous policy No. 726121 had limits of $100,000 per person and $300,000 per occurrence. National contends that these three Bituminous policies provide primary coverage and that the National policy provides only excess coverage after all limits of liability of the primary policies had been exhausted.
The trial court rendered a final judgment and its “Findings of Facts & Memorandum Opinion” reads, in pertinent part:
“The Court further finds as a conclusion of law that the vehicle involved in the accident of September 6, 1973, was a ‘temporary substitute automobile’ within *481 the meaning of the insurance policy issued by National Indemnity Company to Bankhead Forest Industries. Therefore, the Court does hereby declare that the defendant, National Indemnity Company is obligated by the terms of its policy of insurance to extend coverage to Bank-head Forest Industries for the automobile accident occurring on September 6, 1973 between Theo Jackson Lovett and Billy Joe and Nina G. Morrow.
“Further, the Court is of the opinion that the ‘other insurance’ provisions of Bituminous Casualty Corporation Policy # 12369 and the existence of two other Bituminous Casualty Corporation policies numbers 12370 and 726121 do not have the effect of reducing the liability of National Indemnity. The Court finds that Bituminous Policy No. 12369 and the National Indemnity Policy were written together specifically to cover the operation by Bankhead Forest Industries of trucks rented by it from Marshall Frost and to construe the other policies in such a fashion as to cause the other policies written by Bituminous to share in the liability over the primary limits of its policy No. 12369 would frustrate and defeat the very reason for requiring the combination coverage by which Bituminous shouldered a portion of the risk and National the balance.
“Therefore, the Court’s judgment is that the plaintiffs shall have and recover from the defendant, National Indemnity Company, the sum of $30,032.25 plus interest at the legal rate from January 29, 1975.”
On appeal, National asserts that the trial court’s judgment should be reversed and that this Court should enter a judgment which will: (1) determine as a matter of law that the vehicle used by Bankhead in the accident was not a “temporary substitute automobile” and that National is not obligated under the terms of its policy for payment of any portion of the $50,000 awarded to the Morrows; (2) determine that Bituminous had primary coverage under the terms of policy No. 12370. Alternatively, in the event this Court finds the GMC tractor to be a “temporary substitute automobile” as defined in the National policy that it then determine how Bituminous policies No. 12369 and 726121 and the National policy share in the payment of the Morrow judgments.
The principal issue is whether the GMC tractor driven by the Bankhead employee at the time of the accident was a “temporary substitute automobile” under the provisions of Bituminous policy No. 12369 and the National policy. Bituminous policy 12369 defined the words “temporary substitute automobile” as:
“. . [A]n automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; . . .” (Emphasis added)
Condition 1 of the National Indemnity policy provides:
“This policy, except where a provision to the contrary appears herein, is subject to all the conditions, agreements, exclusions and limitations of and shall follow the Primary Insurance in all respects. . . .”
Therefore, as the National policy provides that it follows the primary insurance to which it is excess, the same definition applies to both policies.
National contends that the tractor scheduled on Bituminous policy No. 12369 and the National policy and, which was leased by Frost to Bankhead, lists as the named insured “Marshall Frost, Lessor and Bank-head Forest Industries, Inc., Lessee.” National’s position is that when Frost provided Bankhead with the GMC tractor it did not become a “temporary substitute automobile” since both named insureds had an ownership interest by virtue of the lease agreement. Paragraph 3 of the lease agreement describes the lessee’s interest as follows:
“It is expressly understood and agreed that this is an agreement of leasing only, *482 and that Lessee has by these presents acquired no right, title or interest in or to the vehicles leased hereunder except as specifically set forth herein.” (Emphasis added).
Clearly, the lease agreement controls what right, title, or interest, if any, the lessee has in the GMC tractor.
Our review of the lease agreement discloses no provision wherein the lessee retained or acquired legal title. Without question, the lease agreement expressly vests legal title solely in the lessor.
National correctly points out that this type of lessor-lessee relationship is a case of first impression in this state. However, Bituminous relies on several cases throughout the country to support its position that the GMC tractor was a “temporary substitute automobile.” One of the leading cases on this issue is Farley v. American Auto. Ins. Co., 137 W.Va. 455, 72 S.E.2d 520 (1952). In Farley, an insurance policy was issued to “Earl Farley and Harry Wallace” as the named insured to cover a 1950 Ford truck. While the truck was being repaired, Earl Farley had an accident while driving another truck owned by Harry Wallace. The insurance company denied liability on the ground that the substituted vehicle which Earl Farley was using at the time of the accident was owned by Harry Wallace and therefore the vehicle was not covered under the policy. The Supreme Court of West Virginia held that there was coverage under the policy, finding that Wallace was the sole owner of the temporary substitute and therefore that it was not owned by the “named insured.” The court further stated:
“The provision of the insurance policy here considered is for the insured’s benefit. Such provision, together with all of the other provisions of the policy, are to be construed liberally in favor of the insured, if any construction is necessary. Thompson v. State Automobile Mutual Insurance Co., 122 W.Va. 551, 11 S.E.2d 849. See Employers’ Mutual Liability Insurance Company v. Tollefsen, 219 Wis. 434, 263 N.W. 376; 5 Am.Jur., Automobiles, § 507.
“Though we advert to the rule relative to the construction of the provisions of insurance policies, the language of the provision here considered is clear in its meaning, requires no construction, and it only remains to be applied to the facts disclosed by this record. In the case of Adkins v. Insurance Company, 124 W.Va. 388, 20 S.E.2d 471, this court held that the phrase ‘named insured’ in the absence of any qualification thereof, applies only to the person named as the insured. See Madison v. Steller, 226 Wis. 86, 275 N.W. 703; 7 Appleman, Insurance Law and Practice, § 4354.
“It is thus seen that the unqualified phrase ‘named insured’ has a restricted meaning and does not apply to any persons other than those named in the policy.
“Stating the requirements of the provision relative to the substitute vehicle conversely: if the vehicle substituted for the one being repaired is owned by the named insured, in that event it is not covered by the policy. Bearing in mind the restrictive meaning of the phrase ‘named insured’, we think it would be illogical and untrue to say that Wallace and Farley, being the named insured, owned the substituted vehicle when it is admitted that Wallace was the sole owner thereof. We think that the substituted vehicle, in view of the foregoing, was not owned by the ‘named insured’ and therefore, according to the plain terms of the policy provisions permitting such substitution, the declaration states a cause of action and is good on demurrer.”
72 S.E.2d at 521. See St. Paul-Mercury Indemnity Co. v. Heflin, 137 F.Supp. 520 (W.D.Ark.1956); Townley v. Whetstone, 190 Neb. 541, 209 N.W.2d 350 (1973); Caldwell v. Hartford Accident & Indemnity Co., 248 Miss. 767, 160 So.2d 209 (1964); Baxley v. State Farm Mut. Auto. Liability Ins. Co., 241 S.C. 332, 128 S.E.2d 165 (1962); Annot. 34 A.L.R.2d 936.
In attempting to avoid the effect of the Farley type cases and to bring this case *483 within the exclusion of the definition of a “temporary substitute .automobile,” National contends that these decisions are distinguishable in that, in the instant case, there is a lessor-lessee relationship. Although there are factual differences, the cases relied upon by Bituminous, nevertheless, present reasonably close analogies. Moreover, the partnership relationship in Farley, supra, offers a stronger argument for ownership than the lessor-lessee relationship.
We find the reasoning of the court in Farley persuasive. As we read Bituminous policy 12369, it is clear that the policy does not exclude coverage if the named insured had interests in the temporary substitute automobile, but only excluded coverage if the named insured owned the automobile. Whatever other interests the lessee may have had, the lessee was not the party who held legal title to the GMC tractor and therefore, it was not owned by the lessee. See State Farm Mut. Auto Ins. Co. v. General Mut. Ins. Co., 282 Ala. 212, 215-218, 210 So.2d 688 (1968). Accordingly, we are of the opinion that the trial court correctly held that the GMC tractor was a “temporary substitute automobile” within the meaning of the policy issued by National Indemnity.
National contends that the trial court erred in not requiring Bituminous to have primary responsibility for payment of any of the judgments pursuant to the limits of liability contained in Bituminous policy No. 12370 since this policy scheduled the GMC tractor. National’s argument is that the owner’s policy is always considered the primary policy when the owner’s policy contains a pro rata clause as to nonownership. Bituminous policy No. 12370 and No. 12369 contain an identical “other insurance” clause which reads:
“20. Other Insurance — . . . If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance.”
National asserts that the trial court erred in ignoring the primary liability of Bituminous under policy No. 12370 which contains, as does Bituminous policy No. 12369, liability limits of $10,000 each person and $20,000 each occurrence. National contends that Bituminous is obligated pursuant to the limits of the above-styled policies for the first $40,000 of the Morrow judgments. We cannot agree.
In Continental National American Group v. Burleson, 283 Ala. 671, 220 So.2d 611 (1969), this Court stated the principle of primary and secondary coverage in automobile liability policies:
“We are clear to the conclusion that the majority rule is that where an automobile owner has a policy with an omnibus clause, and an additional insured has a non-ownership policy providing that [it] shall only constitute excess insurance over and above any other, valid, collectible insurance, the owner’s insurer has the primary liability and the excess insurer secondary liability after the primary insurance is exhausted. By virtue of this rule, no consideration is given to the ‘other insurance’ clause in the primary policy, providing that if the additional insured has other valid and collectible insurance, the insurer is not liable except on a pro-rata basis because the insurance under the excess policy is not regarded as other collectible insurance, it not being available to the insured until the primary policy is exhausted. 8 Appleman, Insurance Law and Practice, supra; 16 Couch on Insurance 2d, supra; 76 A.L.R.2d supra; United States Fidelity & Guaranty Co. v. Slifkin (N.D.Ala.), 200 F.Supp. 563.” 283 Ala. at 674, 220 So.2d at 614.
The basic issue centers on the construction and purpose of the “other insurance” *484 provisions. Bituminous contends that the “other insurance” provision written by a company is designed to place the burden, or part of it, on another company. Therefore, this “other insurance” clause necessarily refers to “other insurance” written by a different company than the company whose policy contains the “other insurance” clause. On the other hand, National argues that had Bituminous intended for these provisions to mean only “other insurance” issued by another company, it should have added the words “issued by another company” in the foregoing provisions so as to limit its liability.
In light of the facts surrounding this case, the application advanced by National would have an effect of increasing rather than limiting the liability of Bituminous. We are of the opinion that such a construction would materially alter the meaning of what is commonly referred to as an “other insurance” provision as the purpose of such a clause is to limit a particular company’s liability. Under the lease agreement, Frost was to provide liability insurance to Bank-head of not less than $100,000 for injury or death of one person and $300,000 for injury to or death of all persons injured or killed in the same accident. In order to protect Bankhead and its drivers in the operation of the leased vehicles, Frost purchased insurance. Under Bituminous policy No. 12369, Bituminous was willing to assume a portion of this risk amounting to $10,000 per person and $20,000 per accident. However, Bituminous was not willing to assume the entire risk. Therefore, Bituminous sought another company to assume the remainder of the risk. National Indemnity agreed to assume this portion and wrote its excess policy with a limit of $90,000 per person and $280,000 for each accident. The two policies would have accomplished what the trial court found they intended to accomplish.
In attempting to determine the purpose of an “other insurance” clause, this Court, in State Farm Mutual Auto Ins. Co. v. Auto-Owners Ins. Co., 287 Ala. 477, 252 So.2d 631 (1971), stated:
“It is apparent that Auto-Owners and State Farm, like many other liability insurance companies, have sought to limit their coverage where in their opinion, their policy overlaps with a policy issued by another company. This effort to limit liability has created much confusion and has been the source of much litigation.” 287 Ala. at 480, 252 So.2d at 633. (Emphasis added.)
As was stated by the trial judge in his judgment:
“. . . [T]o construe the policies in such a fashion as to cause the other policies written by Bituminous to share in the liability over the primary limits of its policy No. 12369 would frustrate and defeat the very reason for requiring the combination coverage by which Bituminous shouldered a portion of the risk and National the balance. . . .”
We find that under the circumstances of this case, the “other insurance” provision contained in Bituminous policy 12369 did not bring into effect Bituminous policy 12370 under which the GMC tractor was scheduled.
National contends that the trial court erred in not finding that coverage under Bituminous policy No. 726121 had to be depleted before the National policy was activated. National argues that this general liability policy is primary and thus places the National Indemnity policy in a position of offering secondary coverage. In the alternative, National contends that if the court finds that Bituminous policy No. 726121 does not afford coverage pursuant to its policy limits prior to any contribution by the National policy, then the Bituminous policy 726121 and the National policy should prorate to pay any remaining amount due on the judgments. Under the proration, National contends that it would be required to contribute $4,827 to Bituminous.
The insuring agreement of the National Indemnity policy is as follows:
“1. Excess Indemnity Over Automobile Liability Insurance. The company will indemnify the insured for such loss (as defined herein) as would have been *485 payable under all of the terms of the Bodily Injury Liability and Property Damage Liability Coverages afforded by the Primary Insurance applicable to the accident or occurrence if such primary insurance had been issued for the sum of the limits stated in Columns I and II of item 4 of the declarations; provided that the company’s obligation hereunder shall apply only to loss in excess of the applicable limit of Primary Insurance set forth in Column I and shall not exceed the applicable amount stated in Column II.”
Column I of Item 4 of the declarations contained in the National policy show the “Underlying Limits of Primary Insurance” to be $10,000 for each person and $20,000 for each accident. Column II reveals that the “Company’s (National Indemnity) Limits of Liability” to be $90,000 for each person, and $280,000 for each accident. As stated previously, National contracted to provide coverage in the amount in excess of the primary insurance as written in Bituminous policy 12369. Therefore, we find that Bituminous policy No. 12369 and the National Indemnity policy were written together to cover the vehicles leased by Marshall Frost to Bankhead Forest Industries and that this combined coverage was for $100,000 for each person and $300,000 for each accident in accordance with the lessor’s obligations under paragraph 7(b) of the lease agreement. In light of this finding a determination on the apportionment question is not necessary.
We conclude that the trial court was correct in ordering that National Indemnity Company reimburse Bituminous Casualty Corporation for the remaining $30,032.25 plus interest, and therefore, the judgment is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, SHORES and BEATTY, JJ., concur.