On July 4, 1986, Jane Turnipseed was severely injured in a boating accident while water skiing on Lake Martin; she sued both James Bennett, the operator of the boat, and his father, Dr. Willard Bennett, the owner of the boat. James Bennett was insured under an Independent Fire Insurance Company homeowner's policy with a $100,000 limit. Dr. Bennett had a $300,000 contract of insurance with American States Insurance Company, which paid its policy limit to Ms. Turnipseed in partial settlement of the suit; that insurer is not a party to this appeal. Dr. Bennett also had a personal umbrella liability policy with Mutual Assurance, Inc., which carried a $5,000,000 limit.
On January 27, 1988, Independent Fire filed a declaratory judgment action against Mutual Assurance, which counterclaimed for a declaratory judgment on February 25, 1988. Both parties filed motions for summary judgment. The trial court, in a well-reasoned order, after reviewing cases from Alabama as well as other jurisdictions, concluded that the rule in the majority of states is that, "as between a non-owned vehicle policy and an umbrella policy, the umbrella policy will be excess over all other policies, both excess and primary," and entered summary judgment for Mutual Assurance on February 21, 1989.
Independent Fire appeals from the trial court's determination that it, rather than Mutual Assurance, is primarily liable on its policy of insurance covering the operator of the boat, James Bennett. Specifically, Independent Fire argues that the trial court erroneously abandoned Alabama's "bright line" rule that primary coverage follows ownership. While a driver's insurance is generally held to be excess to an owner's insurance, the issue before us is one of first impression. Although both the Independent Fire policy and the Mutual Assurance policy contain "excess" or "other insurance" language, the Mutual Assurance contract is an umbrella policy, which is generally considered "true excess" insurance and the last to provide coverage, after a primary policy or another excess policy.
The Independent Fire policy reads, in pertinent part:
 "Other Insurance — Coverage E — Personal Liability. This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."
On the other hand, the Mutual Assurance policy provides:
 "Other Insurance. If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased by the named insured to apply in excess of the sum of the retained limit and the limit of liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance." (Emphasis added.)
None of the Alabama cases discussing the priority of "excess" insurance policies have involved an owner-insured covered by an umbrella policy. See State Farm Mut. Auto. Ins. Co. v. GeneralMut. Ins. Co., 282 Ala. 212, 210 So.2d 688 (1968) (two carriers with mutually repugnant "other insurance" provisions must contribute in proportion to their respective limits of liability); State Farm Mut. Auto. Ins. Co. v. Auto-Owners Ins.Co., 287 Ala. 477, 252 So.2d 631 (1971) ("excess" insurance not "other valid and collectible insurance" as term was used in other insurer's "escape" clause; therefore, "escape" insurer's policy *Page 117 
held primary); State Farm Mut. Auto. Ins. Co. v. Auto-OwnersIns. Co., 331 So.2d 638 (Ala. 1976) (general rule that primary coverage follows ownership not controlling where there is a specific exclusionary clause rather than a "simple" escape
clause in owner's policy); State Farm Fire Cas. Co. v.Hartford Acc. Indem. Co., 347 So.2d 389 (Ala. 1977) (policy with pro-rata clause must exhaust its limits before any payment is required by an "excess" policy); Protective Nat'l Ins. Co.of Omaha v. Bell, 361 So.2d 1058 (Ala. 1978) ("excess" policy not "valid and collectible insurance" under "escape" clause policy; thus, latter primarily liable).
However, as noted by the trial court, the prevailing view in those states dealing with this precise issue is that the owner's umbrella policy is the one of last resort. See, e.g.,Carrabba v. Employers Cas. Co., 742 S.W.2d 709 (Tex.App. 1987), and State Farm Fire Cas. Co. v. LiMauro, 65 N.Y.2d 369,492 N.Y.S.2d 534, 482 N.E.2d 13 (1985). One reason for this, as stated in Carrabba, is:
 "There are acknowledged differences between an umbrella policy and a primary policy containing an excess clause. The coverage of the umbrella, or 'catastrophe' policy, is unique. The umbrella policy is generally recognized as having been designed to pick up where primary coverages end, providing extended protection in a time when verdicts can be exceedingly high. 8A J. Appleman, Insurance Law and Practice § 4909.85 (1981). The courts recognize that the umbrella carrier is not a primary insurer that attempts to limit a portion of its risk by describing it as 'excess,' nor is the policy a device to escape responsibility. Id.
Umbrella policies are therefore regarded as true excess over and above any type of primary coverage including excess provisions arising from primary policies. Id."
Carrabba, 742 S.W.2d at 714-15 (citations omitted).
Another reason is the disparity between the premiums paid for simple excess insurance and an umbrella policy. "[U]mbrella policies are sold at comparatively modest prices to pick up where primary coverages end in order to provide extended protection." Occidental Fire Cas. Co. v. Brocious,772 F.2d 47, 53 (3rd Cir. 1985) (citation omitted). Mutual Assurance stresses that umbrella policies are sold at much cheaper prices because they are true excess policies that will not have to pay until all other insurance policies are exhausted. As the trial court observed in this case, Dr. Bennett paid Mutual Assurance a $220 annual premium for $5,000,000 coverage while James Bennett paid Independent Fire an annual premium of $195 for only $100,000 coverage.
Independent Fire cites National Indem. Co. v. Bankhead ForestIndustries, 344 So.2d 479 (Ala. 1977), and Unigard Ins. Groupv. Royal Globe Ins. Co., 100 Idaho 123, 594 P.2d 633 (1979), as authority for its argument that its policy should be excess to Mutual Assurance's policy. Both cases are inapposite. NationalIndem. Co. did not involve an umbrella policy and Unigard, besides presenting the minority view, involved a "specifically excess" policy, which is distinct from Independent Fire's excess policy.
Independent Fire also cites Interstate Fire Cas. v.Auto-Owners Ins., 433 N.W.2d 82 (Minn. 1988), as authority for its position that Mutual Assurance should be held primarily liable. That case is distinguishable for several reasons.
Interstate involved an accident in which a high school student was severely injured by a student supervisor during a physical education class. The school district had a general liability policy with a limit of $500,000 with Continental Insurance and an umbrella policy with Interstate worth $1,000,000. The student supervisor was covered under his father's homeowner's policy with Auto-Owners. Continental and Interstate settled with the plaintiff for $500,000 and $310,863, respectively, and, on appeal, Interstate sought reimbursement from Auto-Owners for the $310,863, arguing that its policy was secondary to Auto-Owners. Both the Interstate and Auto-Owners policies contained excess insurance provisions; however, the Auto-Owners provision was pro rata. *Page 118 
The Minnesota Supreme Court recognized that it was in the minority in finding a conflict between excess and pro rata clauses because the majority of jurisdictions consider an umbrella policy truly excess, as the insurer intends to provide only secondary coverage. The Minnesota court felt the "better approach" was to " 'allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary risks upon which each policy's premiums were based and as determined by the primary function of each policy.' "Interstate, 433 N.W.2d at 85, quoting Integrity Mut. Ins. v.State Auto. Cas. Underwriters Ins. Co., 307 Minn. 173, 175,239 N.W.2d 445, 446 (1976) (citation omitted).
Applying that analysis, the Minnesota court found that Interstate had designed its coverage to be secondary to that of Continental, the underlying carrier, pursuant to the following Interstate policy provision:
 "In the event of . . . exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid hereunder, this policy shall . . . continue in force as underlying insurance."
Interstate, 433 N.W.2d at 86. There is no comparable provision in Mutual Assurance's policy, nor does that policy evidence an intent to cover specifically the type of risk that resulted in Ms. Turnipseed's injury.
In holding Interstate, rather than Auto-Owners, secondarily liable to Continental's coverage, the Minnesota court explained:
 "Interstate, the umbrella carrier, contracted with the school district to provide coverage in excess of the underlying insurance provided by Continental, the primary carrier. While it is true that Interstate relied on Continental's primary coverage in setting its premium, Interstate was not further relying on each student having a family homeowners policy when it calculated its risk in insuring the school district. The umbrella policy contemplated coverage for accidents and injuries sustained on school property during school events. This injury caused by a student supervisor during a physical education class is precisely the type of risk Interstate intended to cover in providing catastrophic insurance to the school district. To hold that Auto-Owners is the primary insurer for this accident would be to ignore the intent of the respective policies."
Interstate, 433 N.W.2d at 86.
Thus, not only does the present case not involve a pro rata clause, Mutual Assurance's umbrella policy also does not provide, as did the Interstate policy, that its coverage is secondary to that of the underlying carrier, here American States.
Finally, Independent Fire argues alternatively that both it and Mutual Assurance should contribute in proportion to their respective policy limits. This "pro rata" argument fails in light of Mutual Assurance's intent as revealed by the wording in its "other insurance" clause, which explicitly states that the Mutual Assurance umbrella policy "shall be in excess of,and not contribute with, such other insurance." Such language has been held to prevent two excess policies from being mutually repugnant and, thus, to preclude contribution. SeeAetna Cas. Surety Co. v. Beane, 385 So.2d 1087 (Fla. Dist. Ct. App. 1980), and State Farm Fire Cas. Co. v. LiMauro, supra. "The 'other insurance' clauses of a primary policy with an excess clause and an umbrella policy are not equivalent and are not mutually repugnant so that they cancel one another."Carrabba, supra, at 715.
We find the trial court's application of the majority rule to be sound and supported by the intent of the parties, as reflected in their respective policies. We therefore affirm the lower court's judgment in favor of Mutual Assurance and hold Independent Fire primarily liable on its policy of insurance with James Bennett.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and HOUSTON, JJ., concur. *Page 119