**HORACE MANN INSURANCE COMPANY, Plaintiff,**

v.

**UNITED INTERNATIONAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 89–T–749–N.**

United States District Court, M.D. Alabama, N.D.

May 23, 1990.

Clyde C. Owen, Jr., Joana S. Ellis, Montgomery, Ala., for plaintiff.

Robert A. Huffaker, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this case, plaintiff Horace Mann Insurance Company contends that defendant United International Insurance Company is liable for a portion of a $2 million settlement paid by Horace Mann on behalf of clients for whom both companies had written insurance policies. The parties have submitted this cause to the court for decision on the record, briefs, and oral argument, without a trial. For the reasons set forth below, the court finds that Horace Mann is entitled to a contribution from United International of $666,666.67 plus statutory prejudgment interest.

### I.

The underlying facts of this case are undisputed. Angie McAll, a student at Murphy High School in Mobile, Alabama, suffered a paralyzing injury during cheerleading practice. McAll and her mother filed suit in the Circuit Court for Mobile County against the school board, the board of school commissioners, the individual school commissioners, the high school principal, the school athletic director, and the cheerleading sponsor.

Horace Mann provided liability insurance coverage for the principal and cheerleading sponsor through a contract with the National Education Association. The limit of liability coverage under this policy was $1 million per occurrence per insured. Because two defendants were covered, Horace Mann's total limit of liability coverage with regard to the McAlls' lawsuit was $2 million. This policy also obligated Horace Mann to defend any suit brought against an insured seeking damages payable under the policy.

United International provided liability insurance coverage for all of the defendants in the McAlls' lawsuit for "catastrophic injuries" arising out of athletic events. Catastrophic injuries are defined as injuries which produce medical expenses in excess of $25,000 within one year. The United International policy limited its liability coverage to $1 million per occurrence "including costs of defense." However, the policy did not obligate United International to furnish counsel to defend the claims asserted against the school board and the school officials.

As will be described later, both Horace Mann and United International considered their policies to be "excess" insurance which would cover any liability over and above that covered by a primary insurer. The school board also had liability insurance coverage with a limit of $100,000 through the Alabama School Board Insurance Trust ("ASBIT").[1]

Upon learning of the McAll lawsuit, Horace Mann hired an attorney who took over the defense of all the defendants. United International learned of the litigation sev-

---

1. ASBIT has not advanced a claim for contribution against United International and is not a party to this action.

eral months later and hired an attorney to monitor the lawsuit.[2] The two attorneys were in contact during several months of trial preparation before Horace Mann advised United International that Horace Mann considered United International to be the primary insurer. United International denied that it was the primary insurer, contending that its insurance was excess.

The parties pursued extensive discussions in attempting to reach a settlement of the McAll lawsuit. At one point, Horace Mann offered $500,000, United International offered $100,000, and ASBIT offered $100,000, the limit of its coverage. The McAlls rejected this settlement offer.[3] Eventually, the McAlls settled their claims for $2.1 million, of which Horace Mann paid $2 million and ASBIT paid $100,000. Horace Mann demanded that United International contribute to the settlement payments, and United International refused, contending that its coverage was excess and would be triggered only when the amount of liability exceeded the limits of the other two policies. Horace Mann then filed this action, seeking to compel a contribution from United International to the settlement with the McAlls.[4]

## II.

This dispute focuses on the proper interpretation of the "Other Insurance" clauses contained in the Horace Mann and United International insurance policies. Insurers include "other insurance" clauses in policies in an attempt to define and limit their liability where the scope and subject matter of their coverage overlaps with that of other insurance policies. *State Farm Mutual Automobile Insurance Co. v. Auto–Owners Insurance Co.*, 287 Ala. 477, 252 So.2d 631, 633 (1971).

## A.

There are three basic types of "other insurance" clauses. A pro rata clause provides that, if the insured has other insurance against liability covered by a policy, the insurer will be liable for the same proportion of the total liability as its limit of liability bears to the total limit of liability for all collectible insurance.[5] If both the Horace Mann and United International policies had included pro rata clauses, the total applicable limit of liability would be $3 million. Horace Mann, with a liability limit of $2 million, would be liable for two-thirds of the actual liability; United International, with a liability limit of $1 million, would be liable for one-third of the actual liability.

The second type of other insurance clause is an "excess" clause. The Horace Mann policy contains a typical excess clause, which states, "the Company shall not be liable for any amount other than the excess over any other valid and collectible insurance applicable to a loss hereunder."[6]

"Escape" clauses comprise the third category of other insurance clauses. An escape clause generally provides that benefits under the policy will not be paid with respect to any liability against which the insured has other valid and collectible insurance. *See State Farm Mutual Auto-*

---

**2.** The attorney hired by United International never took any active role in defending the McAll lawsuit.

**3.** The McAlls also rejected a separate settlement offer from United International that was made under the "no-fault" portion of its policy. The no-fault section of the policy requires United International to offer any covered athlete a package of benefits specified in the policy once the athlete's medical expenses surpass $25,000. The parties dispute the value of the "no-fault" settlement offer, but it is clear that the McAlls rejected that offer because it provided for payments over the lifetime of Angie McCall rather than immediate cash payment. If the McAlls had accepted United International's "no-fault"

settlement offer, all of the insurers would have been released from liability.

**4.** The complaint filed by Horace Mann includes a demand that United International contribute a proportionate share of the legal fees and expenses incurred prior to settlement. The court will not address this contention because Horace Mann has not pursued it in briefs or at oral argument.

**5.** 8A J.A. Appleman & J. Appleman, *Insurance Law & Practice* § 4906, at 345 (1981).

**6.** Horace Mann Insurance Company, "Educators Employment Liability" Certificate of Insurance, VIII (Conditions), H (Other Insurance).

*mobile Insurance Co. v. Auto–Owners Insurance Co.*, 252 So.2d at 633.

### B.

The language of the Horace Mann policy relating to other insurance is quoted above. It is clear that Horace Mann intended its coverage to be excess to any primary insurance that might apply to specific liability. The language of the United International liability policy is less clear, as it contains two "other insurance" clauses, neither of which precisely fits the categories described above.

United International's liability coverage is described in section II of the policy at issue here. Part F, "Conditions," states:

3. Benefits will be paid which are in excess of, but not contribute with, total benefits payable for the same loss under any other liability insurance or self-insurance plan.

Although "Condition 3" is an excess clause, it contains the extra proviso that "Benefits ... will not contribute with" other benefits payable for the same loss. United International contends that this clause is a "super-excess" clause which necessitates the finding that the Horace Mann policy is primary and the United International policy is excess.

To complicate matters further, Part C of the United International policy, "Exclusions Applicable to Section II," states:

Protection shall not extend to ... the following:

\*  \*  \*  \*  \*  \*

17. Liability and litigation expenses eligible for payment or paid by any other collectible liability insurance or self insurance covering the same loss. This insurance shall not duplicate or apply concurrently with other forms of valid and collectible liability insurance or self-insurance and shall not inure to the benefit of any insurer which has issued any other forms of insurance available to the Covered Person or which would be available to the Covered Person in the absence of this insurance.

United International contends that "Exclusion 17" is simply an elaboration of Condition 3, the general excess clause quoted above. However, Exclusion 17 is not easily classified as it contains much of the language generally associated with escape clauses.

Ambiguous language in insurance policies must be construed "liberally in favor of the insured and strictly against the insurance company" in light of the interpretation that ordinary people would place on the language used. *Ho Bros. Restaurant v. Aetna Casualty & Surety Co.*, 492 So.2d 603, 605 (Ala.1986). More specifically, "Exceptions to coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and such clauses must be construed most strongly against the company that issued the policy." *State Farm Mutual Automobile Insurance Co. v. Lewis*, 514 So.2d 863, 865 (Ala.1987). *See also Colbert County Hospital Board v. Bellefonte Insurance Co.*, 725 F.2d 651, 654 (11th Cir.1984) ("Under Alabama law, if an insurance contract provision is subject to more than one interpretation, it should be construed in favor of coverage and against the insurer").

In construing the insurance policies at issue in this case, the court must initially determine whether Exclusion 17 in the United International policy is an escape clause or an excess clause. As noted above, the language of Exclusion 17 does not specifically track the standard form of either escape or excess clauses. The question is whether Exclusion 17's statement that the insurance coverage does not extend to expenses "eligible for payment or paid by any other collectible liability insurance" operates to limit United International's liability to only excess expenses, or if this clause seeks to eliminate coverage entirely for any loss covered under other insurance.

This court is of the opinion that the language of Exclusion 17 is ambiguous and, as an exception to coverage, must be construed in order to provide "maximum coverage" for the insured. *State Farm Mutual Automobile Insurance Co. v. Lewis*, 514

So.2d at 865. Because excess clauses only restrict the availability of coverage to liability that exceeds the limits of other available insurance, while escape clauses preclude coverage entirely when there is any other available insurance, Exclusion 17 must be construed as an excess clause in order to provide the maximum coverage for the insured.[7]

■ The court therefore finds that both the United International and Horace Mann policies contain excess insurance clauses. However, these clauses are "mutually repugnant," since both companies cannot be excess to the other. The Alabama Supreme Court has held that, in this situation, liability must be prorated between the two companies in proportion to each company's share of the total applicable liability coverage. *State Farm Mutual Automobile Insurance Co. v. General Mutual Insurance Co.*, 282 Ala. 212, 210 So.2d 688, 694–96 (1968).

■ As discussed above, United International argues that the language of Condition 3, that "Benefits will be paid which are in excess of, *but not contribute with,* total benefits payable for the same loss under any other liability insurance," makes it a "super-excess" clause and precludes proration under the general rule. United International relies on the recent Alabama Supreme Court case of *Independent Fire Insurance Co. v. Mutual Assurance*, 553 So.2d 115 (Ala.1989), to support this argument. The *Independent Fire* case was an action for a declaratory judgment concerning the two companies' coverage of and duty to defend a personal injury action. The plaintiff, Independent Fire Insurance Company, was the insurer for the driver of a boat involved in the underlying accident, and the defendant, Mutual Assurance, had written an umbrella insurance policy for the boat's owner. The court stated that an umbrella policy "is generally considered 'true excess' insurance and the last to provide coverage, after a primary policy or another excess policy." *Id.* at 116. The court rejected Independent Fire's argument that, because both policies contained excess insurance clauses, both companies should contribute pro rata to provide coverage. It found that the language of the umbrella policy's excess clause—benefits "shall be in excess of, and not contribute with, such other insurance"—clearly expressed the intent of Mutual Assurance that its umbrella coverage would not be subject to proration.

United International contends that it is in a position equivalent to Mutual Assurance because its excess clause specifically states that it will "not contribute with" other insurers. However, the decision in *Independent Fire* was specifically premised on the fact that Mutual Assurance's excess clause was part of an umbrella, or true excess, policy. In denying proration the Court stated, "The 'other insurance' clauses of a primary policy with an excess clause and an umbrella policy are not equivalent and are not mutually repugnant so that they cancel one another." *Id.* at 118 (*quoting Carrabba v. Employers Casualty Co.*, 742 S.W.2d 709, 715 (Tex.App.1987)). This court does not believe that under Alabama law a company should be able to alter its status as an excess insurer simply by including the phrase "not contribute with" in its excess clause, outside of the special context of an umbrella policy.[8] Such a

---

**7.** This conclusion is bolstered by the fact that neither Exclusion 17 nor Condition 3 of the United International policy specifically purports to override contradictory provisions in the body of the policy. If Exclusion 17 were construed as an escape clause, the United International policy would be internally contradictory, and "We cannot reasonably suppose that the parties intended to make such a frustrating agreement." *State Farm Mutual Automobile Insurance Co. v. General Mutual Insurance Co.*, 282 Ala. 212, 210 So.2d 688, 694 (1968). Construing Exclusion 17 as an excess clause therefore serves both the public policy need to construe ambiguity in favor of the insured and to avoid internally contradictory policies.

**8.** United International's argument that its policy is similar to an umbrella policy because it only covers losses resulting from "catastrophic injuries" is unpersuasive. United International has maintained that it considers its policy to be an excess policy which becomes primary insurance if no other primary insurance is available. A true umbrella policy is designed only to "pick up where primary coverages end," and not to provide primary coverage at any time. *Independent Fire Insurance Co. v. Mutual Assurance*, 553

fundamental redefinition of an insurer's status should be more explicit, not only for the benefit of other insurers but more importantly for the insured. The court finds the phrase "not contribute with" in a context outside an umbrella policy would be ambiguous and, therefore, must be construed in favor of coverage and against United International. *Colbert County Hospital Board v. Bellefonte Insurance Co.,* 725 F.2d at 654.

In this light, United International's policy provides ordinary excess coverage. Because the excess clauses of the United International and Horace Mann policies are "mutually repugnant," the $2 million settlement payment made by Horace Mann will be prorated.[9] United International must contribute one-third of that settlement or $666,666.67.

### III.

 Horace Mann also contends that it is entitled to prejudgment interest on United International's contribution to the McAll settlement, from the date that it paid out the $2 million to the day of this judgment. Under § 8–8–8 of the Alabama Code (1975),[10] interest on the amount payable under an insurance policy is due from the date that amount should have been paid to the date of the judgment. *Moore v. Alabama Farm Bureau Mutual Casualty Insurance Co.,* 452 So.2d 1320, 1321 (Ala. 1984). *See also State Farm Automobile Insurance Co. v. Reaves,* 292 Ala. 218, 292 So.2d 95, 102 (Ala.1974) (citing predecessor to § 8–8–8, title 9, § 62, Ala.Code (1940)).

Horace Mann is entitled to prejudgment interest on the $666,666.67 that United International was obligated to contribute to the settlement of the McAll case, because it has been deprived of a sum certain which United International was obligated to pay under its insurance contract. *State Farm*

*Mutual Automobile Insurance Co. v. General Mutual Insurance Co.,* 210 So.2d at 690, 696 (affirming trial court's award of prejudgment interest in contribution action, with interest due from date plaintiff insurance company made settlement payment). The statutory interest rate is 6% per annum, and prejudgment interest is due from January 1, 1989.[11]

An appropriate judgment will be entered.

---

So.2d at 117 (*quoting Carrabba v. Employers Casualty Co.,* 742 S.W.2d 709, 714–15 (Tex.App. 1987)).

**9.** United International has stipulated that settlement of the McAll lawsuit for $2.1 million was reasonable. Order on Pretrial Hearing, at 9.

**10.** Section 8–8–8 provides: "All contracts, express or implied, for the payment of money ...

bear interest from the day such money ... should have been paid...."

**11.** *See* Brief of Plaintiff, at 34, for calculation of date from which prejudgment interest is due. United International has not objected to this date.